[Cite as *State ex rel. A.F. Krainz Co., L.L.C. v. Jackson*, 2012-Ohio-5072.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98104**

## STATE, EX REL., A.F. KRAINZ CO., LLC

PLAINTIFF-APPELLANT

vs.

## MAYOR FRANK G. JACKSON

DEFENDANT-APPELLEE

**JUDGMENT:
AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-662854

**BEFORE:** Blackmon, A.J., Stewart, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** November 1, 2012

**ATTORNEYS FOR APPELLANT**

Jeffrey J. Fanger
Justine S. Winger
Fanger & Associates LLC
Fifth Third Center
600 Superior Avenue, E., Suite 1300
Cleveland, Ohio 44114-2650

**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Interim Director of Law

Joseph F. Scott
Chief Assistant Director of Law
City of Cleveland, Law Department
601 lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077

PATRICIA ANN BLACKMON, A.J.:

{¶1} Relator-appellant, A.F. Krainz, Co., LLC ("Krainz"), appeals the trial court's decision granting summary judgment in favor of respondent-appellee, Mayor Frank G. Jackson ("Mayor Jackson"). Krainz assigns 19 errors for our review.[1]

{¶2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

{¶3} The instant case began on June 6, 2008, when Krainz filed a mandamus action to compel Mayor Jackson to restore the portion of East 47th Street, between St. Clair Avenue and Sorg Court, from a two-way street to a one-way street. In the complaint, Krainz's principal place of business is located on that portion of East 47th Street that was changed. In its complaint, Krainz alleged that the City failed to provide proper notice to resident or business owners prior to instituting the traffic pattern change.

{¶4} Specifically, Krainz alleged that on March 14, 2007, and April 16, 2007, respectively, it submitted a public records request to the City requesting documentation regarding the change in the traffic pattern on East 47th Street. Krainz also alleged that on April 5, 2007, the City responded by supplying an interoffice memorandum that

---

[1]See appendix.

indicated that Day Glo, another company located on East 47th Street, had requested the changes to the traffic pattern.

{¶5} In response to discovery, the City produced several emails between individuals at Day Glo and Robert Mavec, the City's traffic commissioner, and Jomarie Wasik, another City employee. Krainz maintained that these emails contained relevant information that the City should have produced pursuant to the public records request. As a result, on March 20, 2009, Krainz filed a motion for leave to amend its complaint to add causes of action for alleged violations of R.C. 149.351 and 149.43.

{¶6} During the pendency of Krainz's leave to amend its complaint, Mayor Jackson filed a motion for summary judgment. After receiving Krainz's brief in opposition, on February 24, 2010, the trial court granted summary judgment in favor of Mayor Jackson, stating in pertinent part as follows:

> * * * **To be entitled to a writ on [sic] mandamus, one must establish: 1) that he has a clear legal right to the relief prayed for, 2) that respondents are under a clear legal duty to perform the acts, and 3) that the moving party has no plain and adequate remedy in the ordinary course of the law.** *Goudlock v. State*, **Cuyahoga App. No. 84135, 2004-Ohio-2352. Having failed to satisfy the first prong set forth in** *Goudlock*, *supra*, **relator is not entitled to a writ of mandamus.** * * *

{¶7} The trial court never ruled on Krainz's motion for leave to amend the complaint to add causes of action for alleged violations of R.C. 149.351 and 149.43. Consequently, Krainz appealed the trial court's de facto denial of its motion for leave to amend the complaint because of its decision granting summary judgment in favor of Mayor Jackson.

**{¶8}** In *State ex rel. A.F. Krainz Co., LLC v. Jackson*, 8th Dist. No. 94864, 2010-Ohio-6029, we reversed the trial court's de facto denial of Krainz's motion for leave to amend its complaint. Having found that the trial court should have granted Krainz leave to amend the complaint to add the additional causes of action, our court declined to review the trial court's decision granting summary judgment in favor of Mayor Jackson. We held that for us to consider the summary judgment issue would result in a review of only one of Krainz's three claims and constitute piecemeal litigation. *Id.*

**{¶9}** On May 25, 2011, Krainz filed its amended complaint setting forth the additional two causes of action for alleged violations of R.C. 149.351 and 149.43. Ultimately, on November 8, 2011, Mayor Jackson filed a motion for summary judgment on Krainz's two additional causes of action stating in pertinent part that:

> *  *  * **This Court has previously disposed of Count I of Relator's Amended Complaint by entering judgment in favor of Respondent and that judgment remains undisturbed by the decision by the Eighth District Court of Appeals. Relator's remaining claims both concern alleged violations of Ohio's Public Records Act.** Respondent's Motion for Summary Judgment.

**{¶10}** On December 2, 2011, Krainz filed its motions for summary judgment stating in pertinent part as follows:

> *  *  * **Relator set forth three Counts in its Amended Complaint. Count I was previously dismissed by this Court in favor of Respondent. Count II and III allege Respondent's violations of Ohio Public Records law. Relator is entitled to summary judgment on Counts II and III, based on the Ohio Revised Code, applicable case law, and the underlying public policy of Ohio's Public Records Act.** Relator *State Ex Rel. A.F. Krainz Co. LLC's* Motion for Summary Judgment. *  *  *

**{¶11}** On February 17, 2012, the trial court granted summary judgment in favor of Mayor Jackson on Counts II and III of Krainz's Amended Complaint.

## Summary Judgment

**{¶12}** Preliminarily, and as previously stated, Krainz has assigned 19 errors for our review. Although all concern the merit of the trial court's decision granting summary judgment in Mayor Jackson's favor, we find several assigned errors to be repetitive in nature. In addition, a number of assigned errors advance arguments not raised in Krainz's cross-motion for summary judgment or in its response to Mayor Jackson's motion for summary judgment, and are now being raised for the first time on appeal. As an appellate court, we do not consider arguments that the trial court did not address. *Roush v. Butera*, 8th Dist. No. 97463, 2012-Ohio-2506, citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 1992-Ohio-95, 604 N.E.2d 138. We, therefore, will not consider issues raised for the first time on appeal. *Id.*

**{¶13}** Based on the foregoing, we will address the appropriate errors together with a focus on the central issues raised by Krainz in its cross-appeal and in its response to Mayor Jackson's motion for summary judgment.

**{¶14}** We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays*, 140 Ohio App.3d 1, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th

Dist.1997).   Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶15}   Under Civ.R. 56, summary judgment is appropriate when, (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) when viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

{¶16}   The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment.   *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).    If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact.   *Id*. at 293.

{¶17}   Pertinent to the instant action, the requisites for mandamus are well established: (1) the relator must have a clear legal right to the requested relief, (2) the respondent must have a clear legal duty to perform the requested relief and (3) there must be no adequate remedy at law, such as appeal.   Additionally, although mandamus may be used to compel a court to exercise judgment or to discharge a function, it may not control judicial discretion, even if that discretion is grossly abused.   *State ex rel. McGrath v. Calabrese*, 8th Dist. No. 97082, 2011-Ohio-4833.   *See also Ney v. Niehaus*, 33 Ohio St.3d 118, 515 N.E.2d 914 (1987); *State ex rel. Keenan v. Calabrese*, 69 Ohio St.3d 176,

631 N.E.2d 119 (1994); *State ex rel. Daggett v. Gessaman*, 34 Ohio St.2d 55, 295 N.E.2d 659 (1973); and *State ex rel. Pressley v. Industrial Comm. of Ohio*, 11 Ohio St.2d 141, 228 N.E.2d 631 (1967).

{¶18} In the instant case, the gravamen of Krainz's complaint is the City's alleged failure to properly respond to the public records request, entitle it to court costs, attorney fees, and statutory damages pursuant to the public records law.

{¶19} Ohio's Public Records Act reflects the policy that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472. R.C. 149.43 must also be liberally construed in favor of broad access to public records, with any doubt resolved in favor of disclosure. *State ex rel. Bardwell v. Cuyahoga Cty Bd. of Commrs.*, 8th Dist. No. 93058, 2009-Ohio-5573, citing *State ex rel. Natl. Broadcasting Co. v. Cleveland*, 82 Ohio App.3d 202, 611 N.E.2d 838 (8th Dist.1992). *See also State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. Of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174; *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 1996-Ohio-214, 662 N.E.2d 334.

{¶20} Under the applicable test,

**"[a] court may award attorney fees pursuant to R.C. 149.43 where, (1) a person makes a proper request for public records pursuant to R.C. 149.43,(2) the custodian of the public records fails to comply with the person's request, (3) the requesting person files a mandamus action pursuant to R.C. 149.43 to obtain copies of the records, and (4) the person receives the requested records only after the mandamus action is filed, thereby rendering the claim for a writ of mandamus moot."** *State ex rel. Cincinnati Enquirer v. Ronan*, 127 Ohio St.3d 236,

2010-Ohio-5680, 938 N.E.2d 347, quoting *State ex rel. Pennington v. Gundler*, 75 Ohio St.3d 171, 1996-Ohio-161, 661 N.E.2d 1049, syllabus; *see also State ex rel. Laborers Internatl. Union of N. Am. Loc. Union No. 500 v. Summerville*, 122 Ohio St.3d 1234, 2009-Ohio-4090, 913 N.E.2d 452.

**{¶21}** A review of the record shows that after Krainz discovered that the City had changed the aforementioned portion of East 47th Street from a one-way street to a two-way street, Krainz sent a letter on February 19, 2007, to Cleveland City Councilman, Joe Cimperman, detailing its concerns. On March 14, 2007, Krainz followed up with a letter to the City's Public Records Administrator requesting documentation regarding the change in traffic pattern.

**{¶22}** On April 5, 2007, the City responded to Krainz's request by sending inter alia, an interoffice memorandum dated March 19, 2007, detailing the reasons for the changed traffic pattern. The City's response also included Traffic Sign Orders Nos. 729, 730, 731, which revealed that Day Glo Corporation had requested the change in the traffic pattern.

**{¶23}** On April 16, 2007, Krainz sent another letter to the City's Public Records Administrator complaining of a perceived deficiency in the records the City produced. On December 7, 2007, the City supplemented its earlier response by providing five photographs of the street and adjacent buildings. Thereafter, and as previously stated, on June 20, 2008, Krainz instituted the instant action by filing a mandamus action to compel Mayor Jackson to restore that portion of East 47th Street back to a one-way traffic pattern.

**{¶24}** Subsequently, Krainz engaged in discovery, filed written discovery requests, issued subpoenas, and deposed several of the City's employees. On January 2, 2009, the City forwarded responses to Krainz's written discovery request. The response included emails between the City's personnel and Day Glo Corporation. On March 4, 2009, in response to subpoenas, Krainz obtained corresponding emails from Day Glo Corporation.

**{¶25}** On March 20, 2009, Krainz sought leave to amend its complaint to include causes of action for alleged violations of R.C. 149.351 and 149.43. The procedural history that followed Krainz seeking leave to amend the complaint, which has brought us to this juncture, has been discussed above and need not be recapped. However, we must point out that the record shows that Krainz abandoned Count I of its amended complaint that originally sought an order restoring the traffic pattern on the subject portion of East 47th Street.[2] As previously noted, the trial court found that Krainz had not established that it had a clear right to have the traffic pattern restored to a one-way street. Thus, this appeal deals solely with Counts II and III of Krainz's Amended Complaint

**{¶26}** In granting summary judgment in Mayor Jackson's favor, the trial court stated in pertinent part as follows:

> **A review of the relevant case law and the record before the court**
> **reveals that respondent properly responded to relator's original**
> **request. Moreover, a review of the record itself indicates that relator**

---

[2]We note that the trial court ruled on that motion. We declined to deal with it in *Krainz* I.

**did not file the instant action in order to obtain copies of the requested records. Although relator places great emphasis on the absence of the "UC Map" there is no indication that this "map," if it physically existed, is in respondent's possession, or that it relates to anything other than the mere placement of signage. Instead, and as it relates to any outside e-mails, relator was able to obtain all records through a third party. Finally, the Court finds that relator has not been able to demonstrate that it was an "aggrieved person."**

{¶27} A review of the procedural time-line detailed above indicates that Krainz was in possession of the records it sought to compel when it amended its complaint on May 25, 2011, to include causes of action for alleged violations of R.C. 149.351 and 149.43. Because Krainz was in possession of the records it sought to compel in filing the mandamus action, Krainz has not satisfied the test outlined in *Pennington supra*. As such, they were not entitled to court costs, attorney fees, and statutory damages pursuant to R.C. 149.43(C). Mandamus will not compel the performance of an act that has already been performed. *State ex rel. Watson v. Moore*, 10th Dist. No. 11AP-3, 2011-Ohio-6386, citing *State ex rel. Fontanella v. Kontos*, 117 Ohio St.3d 514, 2008-Ohio-1431, 885 N.E.2d 220 ¶ 6.

{¶28} Nonetheless, Krainz maintains that the City failed to produce all the requested documents. In support of this contention and its claim that the City bore the burden of proving that all documents had been produced, Krainz relies on *State ex rel.*

*Simonsen v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 08AP-21, 2008-Ohio-6825. However, the instant case is distinguishable from *Simonsen*. The court in *Simonsen* found that respondent did not state that they had provided relator with all documents responsive to relator's request. Therefore, there was no way of knowing whether respondent's response was complete.

{¶29} Unlike the present case, Krainz identified the records, specifically emails between the City and Day Glo and the "U.C. Map," as the documents covered under the mandamus action. As to the emails, there is no dispute that Krainz obtained those records before filing the instant action, both from Day Glo and the City. Thus, there is no issue regarding the responsiveness of the City's production.

{¶30} Nevertheless, at oral argument, Krainz suggested that there might be other emails that were on the City's old computer server that the City failed to produce. We find no support for this assertion. Jo Marie Wasik, the Director of Public Service for the City, testified in her deposition regarding the alleged emails, as follows:

> Q. **Do you have any other E-mails that have not been produced regarding East 47th Street?**
>
> A. **Not that I know of.** Wasik Depo. 49.
>
> \* \* \*
>
> Q. **Do you know what your department's protocols are with respect to backing up your computers at work?**
>
> A. **Yes.**
>
> Q. **What are your protocols?**

**A.** I believe you should back them up. I believe you should archive your E-mails.

**Q.** Do you do that?

**A.** Yes. I do archive E-mails.

**Q.** Where are they kept?

**A.** On my computer.

**Q.** On your desk top?

**A.** **Yes.** Wasik Depo. 51.

\* \* \*

**Q.** Did you review your E-Mails with respect to this case?
**A.** Yes; I did.

**Q.** How did you go about reviewing your E-mails?

**A.** I looked in the archives.

**Q.** How did you search the archives?

**A.** By date, by subject, by to, by from.

**Q.** Did you ask the IT - - I don't know. \* \* \* Did you ask them for help reviewing your archives?

**A.** Yes; I did.

**Q.** Did they assist you in reviewing your archives?

**A.** Yes.

**Q.** How did they assist you in reviewing your archives?

**A.** **They logged into my computer and searched places that I didn't know were there, but they didn't find anything more than what I had.** Wasik Depo. 52-53.

{¶31}   The above excerpt indicates that Wasik followed the proper protocol   with respect to email correspondence between the City and Day Glo.   The emails were archived, and when the record request was received, Wasik searched the archives by date, by subject, by to, as well as by from, so that she could respond to Krainz's request. Further, Wasik enlisted the assistance of the information technology department, who conducted an even more exhaustive search, but found nothing that had not already been turned over to Krainz.

{¶32}   Here, given that Krainz had already obtained emails from Day Glo and had also received emails from the City, which mirrored the very emails they had received from Day Glo, their present assertion that other emails exist is without merit.

{¶33}   Now, turning our attention to the document referred to as the "U.C. Map," we also find Krainz's contention without merit.   In the action below, Mamie Lemons, a traffic sign marking technician with the City, testified about the U.C. Map, as follows, in her deposition:

Q.   **Can you do the same thing and explain what these instructions are?**

A.   **\* \* \* [A]nd then at the bottom under special instructions, a U.C. Map attached whereas before we dig, we have to have a U.C. clearance to make sure we don't hit any wires or any pipes underneath the ground.**

**\* \* \***

**Mr. Fanger: \* \* \* Let the record reflect that the map has not been produced.**

**Mr. Hajjar: I will look for the map that's the map for the underground detail.**

**A.** Yes. Just gives us clearance to dig.

**Q.** It should have been attached to this traffic sign order; is that correct?

**A.** Sometimes we get it attached. As long as someone calls and they state that it's clear, we are able to dig. We just get permission to dig.

Mr. Hajjar: If the map was attached, I'll get it for you.

\* \* \*

**Q.** Okay. And the purpose of the U.C. Map is for the utilities?
**A.** Yes.

**Q.** So you don't hit a pipe or an electrical line or something like that?

**A.** Correct. Lemons Depo. 15-16.

{¶34} The City's Commissioner for Traffic Engineering, Robert Mavec, also testified about the U.C. Map. Mavec confirmed that the U.C. Map is a utility check that is done before digging begins when signs are be placed. Mavec testified that the U.C. Map represented the locations of the various utility lines that are buried underground and the physical locations on the ground are usually painted. Mavec stated that U.C. Map is a generic term that is used in the field and an actual map might not always be produced.

{¶35} It is clear from the deposition testimony of Lemons and Mavec that the U.C. Map had no bearing on the City's decision to change the traffic pattern on that portion of East 47th Street. Instead, the U.C. Map determined where the signs would be placed and prevented the crew, who would ultimately complete the work order, from accidentally cutting any buried lines.

**{¶36}** Additionally, they testified that it was possible that a U.C. Map was not physically sketched and attached to the work order. Mavec testified that sometimes the crew doing the utility checks simply place flags in the ground or spray paint the grass with bright colors to mark the locations of the buried utility lines. Thus, based on the testimony of Lemon and Mavec, an actual document may not even have been created and is, therefore, nonexistent.

**{¶37}** If the record did not exist when Krainz made its request, then they could not have made the record available. "The Public Records Act does not compel the respondent to create a new document to satisfy the relator's demands." *State ex rel. Sprague v. Wellington*, 7th Dist. No. 11 MA 112, 2012-Ohio-1698, quoting *State ex rel. Fant v. Mengel*, 62 Ohio St.3d 455, 584 N.E.2d 664 (1992).

**{¶38}** Further, given that the purported U.C. Map had no bearing on the City's decision to change the street's traffic pattern, but only impacted sign placements, it was not fatal to Krainz's record request that the City was unable to produce the same. Thus, the City produced all the documents that impacted its decision to change the traffic pattern. As such, the City produced the documents that were responsive to Krainz's request, which specifically dealt with the City's decision to change the traffic pattern on the subject portion of East 47th Street. Further, and as previously stated, the City complied with the request prior to Krainz filing the mandamus action.

**{¶39}** Nonetheless, Krainz argues that if the records were produced, then the City's response was untimely.

**{¶40}** However, with regard to Krainz's request for statutory damages, Krainz has the burden to demonstrate that the City's response to its public records request was unreasonably delayed. *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274. Further, a review of R.C. 149.43(B)(1) reveals that the state of Ohio has not set a required time period for a public office to respond to a request for copies of public records. The only requirement is that the copy be made available in a reasonable period of time. *Id.*

**{¶41}** Here, Krainz's mandamus complaint was tailored to the request for records they contended had not been made available, and as previously discussed, such records were provided before they filed this action. Thus, Krainz's present assertion is moot. *See generally State ex rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 700 N.E.2d 12 (1998); *State ex rel. Warren v. Warner*, 84 Ohio St.3d 432, 704 N.E.2d 1228 (1999).

**{¶42}** Although Krainz broadly alleges a 235 day delay in the City's response to their request, the record reveals that on April 5, 2007, less than three weeks after Krainz's request, the City responded by sending inter alia, an interoffice memorandum dated March 19, 2007, detailing the reasons for the changed traffic pattern. As previously noted, the City's response also included Traffic Sign Orders Nos. 729, 730, 731, which revealed that Day Glo Corporation had requested the change in the traffic pattern.

**{¶43}** Later, in response to discovery, the City produced several emails between individuals at Day Glo and the City; given that Krainz submitted the public records request on March 14, 2007, and the City began responding by April, 5, 2007, we find

Krainz's allegation of a 235 day delay, a mischaracterization. As such, we find no merit in Krainz's claim relating to the timeliness of the City's provision of these records.

**{¶44}** Finally, Krainz argues that it should not have had to obtain the emails from Day Glo Corporation. As previously discussed, the record is clear that Krainz had obtained all the records that dealt with the City's decision to change the traffic pattern on the subject portion of East 47th Street from the city. Krainz received these records before it filed the mandamus action. As such, we find this argument without merit.

**{¶45}** We conclude there are no genuine issues of material fact. The record indicates the City had provided all the documents that were responsive to Krainz's public records request. We further conclude that the U.C. Map that has been so focal to Krainz's claim that the City did not fully respond to its request, was immaterial to the City's decision to change the traffic pattern on that portion of East 47th Street. As such, the trial court properly granted summary judgment in Mayor Jackson's favor. Accordingly, we overrule Krainz's assigned errors.

**{¶46}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, ADMINISTRATIVE JUDGE

MELODY J. STEWART, J., and
MARY J. BOYLE, J., CONCUR

**<u>APPENDIX</u>**

**<u>Assignments of Error</u>**

I. The court abused its discretion when it ruled by summary judgment that respondent properly responded to relator's proper public records request pursuant to R.C. 149.43 due to the fact that whether or not respondent fully responded to the public records request is a question of fact in dispute as evidence existed that additional emails may exist.

II. The trial court abused its discretion when it ruled by summary judgment that respondent properly responded to relator's proper public records request when respondent responded 235 days after the request was made pursuant to R.C. 149.43.

III. The trial court abused its discretion when it ruled by summary judgment that there were no material issues of fact despite citing in its decision that there were issues of fact as to whether or not certain documents existed and or were in possession of the respondent, which by definition is a question of fact.

IV. The court abused its discretion when it ruled by summary judgment that there were no issues of fact despite issues raised in relator's brief as to whether or not respondent had possession or additional emails not yet produced, the existence of which is a question of fact.

V. The court abused its discretion when it ruled by summary judgment due to the fact that the court in its own decision references a dispute of fact regarding whether or not a map exists and whether or not said may is in respondent's possession.

VI. The court abused its discretion when it ruled by summary judgment that relator did not file the instant action in order to obtain copies of the requested records.

VII. The court abused its discretion when it ruled by summary judgment that relator did not file the instant action in order to obtain copies of the requested records as the identification of possible records due to subpoena of a third party does not absolve the public entity from having to locate the records so that a determination can be made as to whether there are relevant records not produced.

VIII. The court abused its discretion when it ruled by summary judgment as there is an open issues of fact regarding why the respondent has been unable to locate emails that clearly existed, that were not timely produced and that clearly were public records for which the respondent was required to maintain.

**IX.** The court abused its discretion when it ruled by summary judgment that relator was able to obtain all records through a third party as it predetermines that all records have been obtained which is a question of fact.

**X.** The court abused its discretion when it ruled by summary judgment that a governmental entity has properly complied with Ohio's Public Records Law despite the fact that the governmental entity failed to maintain and or produce records that it clearly had in its possession at one point in time, that it did not produce records timely pursuant to a proper public records request, that said existence of said records only became known to the respondent upon the proffering of a subpoena upon a third party, and that the governmental entity has been unable to locate or explain as to the records unavailability. The court's decision effectively absolves the governmental entity of its obligation to maintain records and to produce said records upon request. The court's ruling substantially undermines the public policy and purpose of Ohio's Public Records Law by permitting a governmental entity to avoid maintain and or producing records if the records are able to be produced pursuant to a subpoena upon a third party. The court's ruling creates a new standard in Ohio whereby a party that requests a public record (and thereby learns through litigation that the governmental entity did not properly produce there record by subpoenaing a third party which provides knowledge of the existence of the non-produced record) is precluded from a finding that the governmental entity violated Ohio's Public Records Law due to the production of the documents by the third party. The court's determination would effectively eliminate the need for any governmental entity to maintain any record that was produced to a third party.

**XI.** The trial court abused its discretion when it ruled by summary judgment that a party upon learning that public records existed that had not been properly produced, that timely seeks to amend its complaint to add an action in mandamus to obtain said records and for damages caused as a result of the failure to timely produce said records, is foreclosed from relief due to the fact that the amended action in mandamus was filed after knowledge of the fact that the records had not been produced by the government entity. It is an abuse of discretion and contrary to Ohio public policy for a trial court to determine by summary judgment that receipt of records from a third party that prove a governmental entity has not properly complied with a public records request extinguishes a party's right to seek relief and attorney fees by mandamus action for the governmental entity's failure to produce the records upon the proffering of the public records request.

XII. The trial court abused its discretion by using the date of the amending of the complaint as the date for purposes of determining when the person initiated the action for purposes of the Ex Rel *Pennington v. Gundler* (1996), 75 Ohio St.3d 171 standard when the court should have used the date of the commencement of the initial action not the date of the amended complaint to determine whether the person received the requested records after the action was filed.

XIII. The trial court abused its discretion by determining by summary judgment that relator did not file the instant action in order to obtain copies of the requested records.

XIV. The court abused its discretion when it ruled by summary judgment that relator was able to obtain all records through a third party as it predetermines that all records have been obtained which is a question of fact.

XV. The court abused its discretion when it ruled by summary judgment that relator was able to obtain all records through a third party as said determination requires a factual determination that all records have in fact been obtained which is in dispute.

XVI. The court abused its discretion when it ruled by summary judgment that the relator is not an aggrieved person despite the fact that the relator was clearly harmed by the improper presumed destruction and disposal of emails by the city.

XVII. The court abused its discretion when it ruled by summary judgment and failed to examine in an evidentiary hearing the city's inability to produce emails and other documents properly requested pursuant to the relator's public records request.

XVIII. The court abused its discretion when it ruled by summary judgment and failed to examine in an evidentiary hearing the city's response time of 235 days in responding to a public records request despite case law that has held the city liable for a delay of 29 days.

XIX. The court abused its discretion when it ruled by summary judgment and determined that the city had properly responded to the public records request without addressing the sufficiency and clarity of the relator's public records request.