[Cite as *In re T.C.K.*, 2013-Ohio-3583.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

IN THE MATTER OF:

|  |  |  |
|---|---|---|
| | : | |
| T.C.K. | : | Case No. 13CA3 |
| | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| | : | |
| | : | RELEASED 08/12/2013 |

_____

**<u>APPEARANCES</u>**:

Amanda Keys, St. Marys, West Virginia, Pro Se Appellant.

_____

Hoover, J.

{¶ 1}  Amanda Keys, the natural mother of T.C.K., appeals the trial court's decision that awarded legal custody of her child to April King, the child's paternal aunt. Appellant, appearing *pro se*, does not set forth assignments of error in accordance with the Appellate Rules.  We have attempted to discern some cognizable assignments of error from the litany of Juvenile Rules that appellant cites.  None of the cognizable assignments of error have merit.  Accordingly, we overrule appellant's assignments of error; and we affirm the trial court's judgment.

I.  FACTS

{¶ 2}  On or about November 24, 2009, the trial court adjudicated T.C.K. a dependent child and ordered the child to remain in appellant Amanda Key's legal custody under the protective supervision of Washington County Children Services's (WCCS). On April 16, 2010, the court terminated the order of protective supervision and placed the child in appellant's legal custody.

{¶ 3}  On April 26, 2012, April King, the child's paternal aunt, filed a petition for custody of the child.

{¶ 4}  The court subsequently appointed a guardian ad litem for the child.  The guardian ad litem recommended that the court award King legal custody of the child.

{¶ 5}  On December 14, 2012, the trial court determined that awarding King legal custody of the child would serve the child's best interests.  In reaching its decision, the court set forth the following facts:

[T.C.K.] is a 5 ½ year old boy currently in the temporary custody of his paternal aunt, April King.  Ms. King filed for custody on April 26, 2012, and this Court granted her temporary custody on April 27, 2012.  At the time of her filing, Ms. King had physical custody of [the child] for at least a week after she picked the child up for an overnight visit and the parents never came back for him.

This was not the first time that [the child] had lived with his aunt. He lived with her from August 23, 2007, to April 11, 2009, due to both parents being charged with and later convicted of felony charges in West Virginia relating to the manufacturing of methamphetamine.  West Virginia Children Services as a result of the charges placed [the child] with Ms. King.  Rodney King [the child's father] served approximately 2 years in prison on that charge and [appellant] served 120 days in the county jail along with 5 years community control.  After Mr. King's release from prison, the parents reconciled and [the child] returned to their home in Newport, Ohio.  The family resided in Newport, Ohio from April

2009 until June of 2012. During this time the child moved back and forth between Ms. King, the paternal grandparents and his parents. Between Christmas 2011 and April 2012, when Ms. King obtained temporary custody, the child resided with Ms. King a majority of the time.

The parents over the years failed to keep the child's shots current. He hadn't been to his pediatrician for 3 years prior to Ms. King obtaining temporary custody. They also failed to provide proper dental care for him. He had a cavity that they neglected for 6 months to have filled which caused him pain when eating. Ms. King has brought all shots current and had his cavity filled.

Accordingly, [sic] to the testimony of family, neighbors and their landlord, the parents fought regularly. They could be heard yelling and screaming at each other all hours of the day. The children were generally present during these fights. Some of the fights involved physical violence between the parents.

In May 2012 the utilities to the parents' home were disconnected and in June they were evicted. After being evicted, the parents and the other two children lived in tents during June and July 2012 in West Virginia, before moving into a house in West Virginia. [The child] visited his parents during the time they lived in the tents. During one of the visits on July 21, 2012, the child was injured during a fight between his parents. His father was hitting his mother and when he stepped between them his father hit him in the head. The child reported this to Ms. King who

immediately took him to the hospital because he was complaining of headaches. West Virginia Children Services was contacted and an investigation was undertaken. As a result of their investigation, [the child's] two half brothers were removed from the custody of their mother, Amanda Keys by West Virginia authorities and placed in foster care on August 1, 2012. [The child] was not removed since he was in the temporary custody of April King and they were satisfied with his placement since they had placed him with Ms. King back in 2007 to 2009 when the parents went to jail and prison on the drug charge. The worker testified that if [the child] were returned to his parents by this Court that they would immediately file for emergency removal of him. The removal of the two boys by West Virginia was as a result of concerns of domestic violence, physical and verbal abuse of all 3 children, and drug usage by both parents in the presence of the children. As of this date, [the child's] half brothers still remain in foster care in West Virginia.

At the time of the child's placement in the temporary custody of April King in April 2012 his behavior was terrible. He was a very violent and angry child. He was afraid his parents would return and take him away. He was scared by the thought of going with them. He would hit and cuss at people and talk about sex. He knew more about sex than a 5 year old should. Ms. King placed him in counseling. He sees a counselor one time per week and is now on Adderall. His behavior as a result of the counseling is much better now, although he still has some anger issues.

According to the child's guardian ad litem's testimony in Court and in his report, the child is scared by the thought of going back to his parents and told the guardian ad litem they are mean. He told the guardian ad litem that he desires to live with his aunt and stated that he would run away if he were returned to his parents.

The guardian ad litem believes it would be in the best interest of [the child] to be placed in the legal custody of his paternal aunt given all the issues with his parents and the fact that he is bonded with April King and she can provide a stable environment for the child.

{¶ 6} The court determined that the parents are unsuitable and that placing the child in the parents' custody would not be in the child's best interests. The court concluded that awarding King legal custody of the child would serve his best interests. The court thus awarded King legal custody. Appellant timely appealed the trial court's judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 7} Appellant has not raised any assignments of error that comply with the appellate rules. Instead, she lists eleven Juvenile Rules preceded by "Trial Court er [sic]" or "Receiving agency er [sic]." We ordinarily afford considerable leniency to *pro se* litigants and do not necessarily hold them to the same standards as attorneys. *E.g., State v. Ritchie,* 4th Dist. No. 10CA20, 2011–Ohio–164, ¶5; *Robb v. Smallwood,* 165 Ohio App.3d 385, 2005–Ohio–5863, 846 N.E.2d 878, ¶5 (4th Dist.); *Whittington v. Kudlapur,* 4th Dist. No. 01CA1, 2001–Ohio–2525. However, we will not "conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning." *State*

*ex rel. Karmasu v. Tate*, 83 Ohio App.3d 199, 206, 614 N.E.2d 827 (1992). We will

consider a *pro se* litigant's appellant's brief so long as it "contains at least some

cognizable assignment of error." *Robb* at ¶ 5; *accord Coleman v. Davis,* 4th Dist. No.

10CA5, 2011–Ohio–506, ¶14 (considering *pro se* litigant's brief when it contains "some

semblance of compliance" with appellate rules of practice and procedure).

{¶ 8} In the case *sub judice*, we are tempted to dismiss this appeal based upon

appellant's failure to comply with the appellate rules and to identify any cognizable

assignment of error. Appellant's listing of a variety of Juvenile Rules does not tell us

precisely how she believes the trial court erred when applying the rules. However, we

have liberally construed appellant's brief and believe some assignments of error can be

surmised. We explain and discuss each one below.

III.

ANALYSIS

A.

LACK OF TRANSCRIPT

{¶ 9} Before considering appellant's assignments of error, we first note that the

record does not contain a transcript of the custody hearing. Although appellant requested

a transcript of the proceedings, the court reporter filed an affidavit in which he alleged

that he could not transcribe the proceedings due to a malfunction in the recording.

{¶ 10} App.R. 9(C) specifies the procedure an appellant may follow when a

transcript is unavailable: "If no recording of the proceedings was made, if a transcript is

unavailable, or if a recording was made but is no longer available for transcription, the

appellant may prepare a statement of the evidence or proceedings from the best available

means, including the appellant's recollection." In *Knapp v. Edwards Laboratories*, the

court set forth the consequences of failing to provide a transcript or a statement of the

evidence: "When portions of the transcript necessary for resolution of assigned errors are

omitted from the record, the reviewing court has nothing to pass upon and thus, as to

those assigned errors, the court has no choice but to presume the validity of the lower

court's proceedings, and affirm." 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

{¶ 11} In the case at bar, without a transcript of the custody hearing or a

statement of the evidence, our review of appellant's assignments of error is limited.

Absent an adequate record of the facts, testimony, and evidentiary matters necessary to

support appellant's assignments of error, we have nothing to pass upon and are left with

no choice but to presume the validity of the proceedings and affirm trial court's

judgment.

## B.

## Juv. R. 3

{¶ 12} Appellant contends that the trial court erred when applying Juv.R.

3(A)(1)(3), (B), and (D). Juv.R. 3 reads, in relevant part:

> (A) A child's right to be represented by counsel may not be waived in the
>
> following circumstances:
>
> (1) at a hearing conducted pursuant to Juv.R. 30;
>
> * * * *
>
> (3) when there is a conflict or disagreement between the child and the
>
> parent, guardian, or custodian; or if the parent, guardian, or custodian requests
>
> that the child be removed from the home.

(B) If a child is facing the potential loss of liberty, the child shall be informed on the record of the child's right to counsel and the disadvantages of self-representation.

* * * *

(D) Any waiver of the right to counsel shall be made in open court, recorded, and in writing.  In determining whether a child has knowingly, intelligently, and voluntarily waived the right to counsel, the court shall look to the totality of the circumstances including, but not limited to: the child's age; intelligence; education; background and experience generally and in the court system specifically; the child's emotional stability; and the complexity of the proceedings.  The Court shall ensure that a child consults with a parent, custodian, guardian, or guardian ad litem, before any waiver of counsel.  However, no parent, guardian, custodian, or other person may waive the child's right to counsel.

{¶ 13}  In the case at bar, appellant may be arguing that the trial court erred by permitting the child to waive counsel or she may be arguing that the trial court erred by determining that the child validly waived counsel.  We reject both of these arguments.

{¶ 14}  First, appellant does not have standing to appeal any error that may have occurred with respect to the child's waiver of counsel.  As this court recognized in *In re Moody,* 4th Dist. No. 00CA5 (June 28, 2001):  "'An appealing party may complain of an error committed against a non-appealing party when the error is prejudicial to the rights of the appellant.'"  *Id.*, quoting *In re Smith*, 77 Ohio App.3d 1, 13, 601 N.E.2d 45 (1991) (citations omitted).  Thus, a parent has standing to appeal an error committed against a

child when the parent and the child seek the same outcome, *i.e.*, reunification of the family. When a parent and child seek the same outcome, then an error "that is prejudicial to the children's interests in that outcome is similarly prejudicial to the parents' interests." *Id.*; *accord In re S.S.*, 10th Dist. Nos. 12AP–322 and 12AP–323, 2012-Ohio-4794, ¶26 ("Parents have standing to appeal an error committed against their children only if the error is prejudicial to the parents' rights."); *In re B.L.,* 10th Dist. No. 04AP–1108, 2005–Ohio–1151, ¶ 44.

{¶ 15} In the case at bar, the trial court's decision makes clear that appellant and the child did not seek the same outcome. The trial court found that the child does not want to be placed in appellant's legal custody. On the other hand, appellant wishes to have the child returned to her legal custody. Because appellant and the child did not seek the same outcome, their interests are not aligned such that an error prejudicial to the child also prejudiced appellant. *In re Johnson*, 10th Dist. Nos. 03AP-1264 and 03AP-1265. 2004-Ohio-3886, ¶13 (concluding that parent lacked standing to raise error relating to deprivation of counsel to children when children wished to be adopted and thus interests not aligned). Consequently, appellant lacks standing to raise an error relating to the child's waiver of counsel.

{¶ 16} Additionally, even if appellant has standing to assert this error, appellant never raised any issue relating to the child's right to or waiver of counsel during the trial court proceedings. "Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal." *Stores Realty Co. v. City of Cleveland, Bd. of Bldg. Standards and Bldg. Appeals*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975), citing

*Snyder v. Standford*, 15 Ohio St.2d 31, 238 N.E.2d 563 (1968), and *Oney v. Needham*, 6

Ohio St.2d 154, 216 N.E.2d 625 (1966).  An appellate court may recognize an error that

an appellant waived only if it constitutes plain error.  *E.g., In re Etter*, 134 Ohio App.3d

484, 492, 731 N.E.2d 694 (1998).  Courts should exercise extreme caution when invoking

the plain error doctrine, especially in civil cases.  The Ohio Supreme Court has

admonished courts to limit applying the plain error doctrine to cases "involving

exceptional circumstances where error, to which no objection was made at the trial court,

seriously affects the basic fairness, integrity, or public reputation of the judicial process *

* *."  *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099 (1997).

{¶ 17}  The case at bar does not involve exceptional circumstances and any error

regarding the child's waiver of counsel did not seriously affect the basic fairness,

integrity, or public reputation of the judicial process.  Accordingly, based upon the

foregoing reasons, we overrule this assignment of error.

## C.

### Juv. R. 4

{¶ 18}  Appellant next asserts that the trial court erred when applying Juv.R.

4(A), (B)(4), (B)(5), (B)(7), and (B)(8).  Those provisions state:

> (A) Assistance of counsel
>
> Every party shall have the right to be represented by counsel and
> every child, parent, custodian, or other person in loco parentis the right to
> appointed counsel if indigent.  These rights shall arise when a person
> becomes a party to a juvenile court proceeding.  When the complaint
> alleges that a child is an abused child, the court must appoint an attorney

to represent the interests of the child.  This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute.

(B) Guardian ad litem; when appointed

The court shall appoint a guardian *ad litem* to protect the interests of a child or incompetent adult in a juvenile court proceeding when

* * *

(4) The court believes that the parent of the child is not capable of representing the best interest of the child.

(5) Any proceeding involves allegations of abuse or neglect, voluntary surrender of permanent custody, or termination of parental rights as soon as possible after the commencement of such proceeding.

(6) There is an agreement for the voluntary surrender of temporary custody that is made in accordance with section 5103.15 of the Revised Code, and thereafter there is a request for extension of the voluntary agreement.

(7) The proceeding is a removal action.

(8)  Appointment is otherwise necessary to meet the requirements of a fair hearing.

{¶ 19}  We first observe that the court appointed a guardian ad litem for the child. Thus, we summarily reject any argument that the trial court erred by failing to appoint a guardian ad litem for the child.

{¶ 20} It is not clear whether appellant is asserting that the trial court erred by failing to appoint a guardian ad litem to represent her. To the extent that she is making this assertion, she waived any error by failing to request the court to appoint a guardian ad litem. Additionally, based upon the extremely limited record before this court, we cannot state that the court committed plain error by failing to appoint a guardian ad litem for appellant.

{¶ 21} To the extent appellant asserts that the trial court erred by failing to appoint counsel to represent her or the child, neither appellant nor the child has a right to appointed counsel in a private custody matter between a parent and a non-parent and in which the state does not seek a termination of parental rights.

{¶ 22} Juv.R. 4(A) states that "[e]very party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent." However, the rule further states that it does not create a "right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute."

{¶ 23} R.C. 2151.352 governs the right to counsel in juvenile proceedings and provides, in relevant part:

A child, the child's parents or custodian, or any other person in

loco parentis of the child is entitled to representation by legal counsel at

all stages of the proceedings under this chapter or Chapter 2152. of the

Revised Code. If, as an indigent person, a party is unable to employ

counsel, the party is entitled to have counsel provided for the person

pursuant to Chapter 120. of the Revised Code *except in civil matters in*

*which the juvenile court is exercising jurisdiction pursuant to division*

*(A)(2) * * * of section 2151.23 of the Revised Code.*

(Emphasis added).

{¶ 24} In the case sub judice, the juvenile court exercised jurisdiction pursuant to R.C. 2151.23(A)(2). That section grants a juvenile court exclusive original jurisdiction "to determine the custody of any child not a ward of another court of this state." Because the court exercised jurisdiction under R.C. 2151.23(A)(2), the civil-matter exception specified in R.C. 2151.352 applies. Thus, neither appellant nor the child has a right to appointed counsel. *In re D.H.*, 10th Dist. No. 11AP-761, 2012-Ohio-2272, ¶12 (observing that parent not entitled to appointed counsel when court proceeding concerned legal custody of children who are not wards of another court of this state); *In re D.J.M.*, 11th Dist. No. 2011-L-022, 2011-Ohio-6836, ¶35 (finding that father not entitled to appointed counsel in proceeding brought under R.C. 2151.23(A)(2)); *In re M.E.H.*, 4th Dist. No. 08CA4, 2008-Ohio-3563, ¶12 (same).

{¶ 25} Accordingly, based upon the foregoing reasons, we overrule this assignment of error.

## D.

## Juv.R. 6

{¶ 26} Next, appellant contends that the trial court erred when applying "Juv.R. 6(B)(C)(E)(2)(3)(G)(H)(J)." Juv.R. 6(C), (E)(2), (E)(3), (G), (H), and (J) are non-existent. Juv.R. 6(B) states:

(B) Probable cause hearing

When a child is taken into custody pursuant to an ex parte emergency order pursuant to division (A)(3)(g) or (A)(4) of this rule, a probable cause hearing shall be held before the end of the next business day after the day on which the order is issued but not later than seventy-two hours after the issuance of the emergency order.

{¶ 27} Appellant's apparent argument is that the trial court erred by failing to hold a probable cause hearing in accordance with Juv.R. 6(B). Juv.R. 6(B) requires a probable cause hearing "[w]hen a child is taken into custody pursuant to an ex parte emergency order pursuant to division (A)(3)(g) or (A)(4)." Those two provisions state:

(A) A child may be taken into custody:

* * * *

(3) by a law enforcement officer or duly authorized officer of the court when any of the following conditions exist:

* * * *

(g) A juvenile judge or designated magistrate has found that there is probable cause to believe any of the conditions set forth in division (A)(3)(a), (b), or (c) of this rule are present, has found that reasonable efforts have been made to notify the child's parents, guardian ad litem or custodian that the child may be placed into shelter care, except where notification would jeopardize the physical or emotional safety of the child or result in the child's removal from the court's jurisdiction, and has ordered ex parte, by telephone or otherwise, the taking of the child into custody.

(4) By the judge or designated magistrate ex parte pending the

outcome of the adjudicatory and dispositional hearing in an abuse, neglect,

or dependency proceeding, where it appears to the court that the best

interest and welfare of the child require the immediate issuance of a

shelter care order.

{¶ 28} The case at bar arose from King's filing of a petition for legal custody. When she filed the petition, she requested the court to award her temporary custody of the child, which the court did. Nothing in the record indicates that a law enforcement officer or duly authorized officer of the court removed the child from appellant's custody. Instead, according to the trial court's decision, the child already had been staying with King and the parents failed to contact King or pick up the child when scheduled. Consequently, we do not find Juv.R. 6(B) applicable to the facts in the case sub judice.

{¶ 29} Even if Juv.R. 6(B) applies, appellant has not identified how the failure to hold a probable cause hearing within the specified time prejudiced the outcome of the case. Thus, any error that the trial court may have committed is harmless error that we may disregard. Civ.R. 61.

{¶ 30} Accordingly, based upon the foregoing reasons, we overrule this assignment of error.

E.

Juv.R. 17

{¶ 31} Appellant asserts that the trial court erred when applying "Juv.R. 17(D)(1)(2)(3)(a)(b)(c)(d)(4)(5)(E)(1)(2)(G)." Those provisions state:

(D) Protection of persons subject to subpoenas

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.

(2)(a) A person commanded to produce under division (A)(1)(b)(ii), (iii), or (iv) of this rule is not required to appear in person at the place of production or inspection unless commanded to attend and give testimony at a trial, hearing, proceeding, or deposition.

(b) Subject to division (E)(2) of this rule, a person commanded to produce under division (A)(1)(b)(ii), (iii), or (iv) of this rule may serve upon the party or attorney designated in the subpoena written objections to production. The objections must be served within fourteen days after service of the subpoena or before the time specified for compliance if that time is less than fourteen days after service. If objection is made, the party serving the subpoena shall not be entitled to production except pursuant to an order of the court that issued the subpoena. If objection has been made, the party serving the subpoena, upon notice to the person commanded to produce, may move at any time for an order to compel the production. An order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the production commanded.

(3) On timely motion, the court from which the subpoena was issued shall quash or modify the subpoena, or order appearance or

production only under specified conditions, if the subpoena does any of the following:

(a) Fails to allow reasonable time to comply;

(b) Requires disclosure of privileged or otherwise protected matter and no exception or waiver applies;

(c) Requires disclosure of a fact known or opinion held by an expert not retained or specially employed by any party in anticipation of litigation or preparation for trial if the fact or opinion does not describe specific events or occurrences in dispute and results from study by that expert that was not made at the request of any party;

(d) Subjects a person to undue burden.

(4) Before filing a motion pursuant to division (D)(3)(d) of this rule, a person resisting discovery under this rule shall attempt to resolve any claim of undue burden through discussions with the issuing attorney. A motion filed pursuant to division (D)(3)(d) of this rule shall be supported by an affidavit of the subpoenaed person or a certificate of that person's attorney of the efforts made to resolve any claim of undue burden.

(5) If a motion is made under division (D)(3)(c) or (D)(3)(d) of this rule, the court shall quash or modify the subpoena unless the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated.

(E) Duties in responding to subpoena

(1) A person responding to a subpoena to produce documents shall, at the person's option, produce the documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the subpoena. A person producing documents pursuant to a subpoena for them shall permit their inspection and copying by all parties present at the time and place set in the subpoena for inspection and copying.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

* * * *

(G) Privileges

Nothing in this rule shall be construed to authorize a party to obtain information protected by any privilege recognized by law or to authorize any person to disclose such information.

{¶ 32}  We are unable to discern a specific assignment of error from appellant's reference to Juv.R. 17.  The reference is too general to enable us to determine what error appellant alleges occurred.  Therefore, we summarily overrule this assignment of error.

F.

Juv.R. 27

{¶ 33} Appellant argues that the trial court erred when applying "Juv.R. 27(B)(1)(a)(b)(c)(2)(a)(b)(c)(3)(a)(b)(c)." Those provisions state:

(B) Special provisions for abuse, neglect, and dependency proceedings

(1) In any proceeding involving abuse, neglect, or dependency at which the court removes a child from the child's home or continues the removal of a child from the child's home, or in a proceeding where the court orders detention, the court shall determine whether the person who filed the complaint in the case and removed the child from the child's home has custody of the child or will be given custody and has made reasonable efforts to do any of the following:

(a) Prevent the removal of the child from the child's home;

(b) Eliminate the continued removal of the child from the child's home;

(c) Make it possible for the child to return home.

(2) In a proceeding involving abuse, neglect, or dependency, the examination made by the court to determine whether a child is a competent witness shall comply with all of the following:

(a) Occur in an area other than a courtroom or hearing room;

(b) Be conducted in the presence of only those individuals considered necessary by the court for the conduct of the examination or the well being of the child;

(c) Be recorded in accordance with Juv. R. 37 or Juv. R. 40. The court may allow the prosecutor, guardian ad litem, or attorney for any party to submit questions for use by the court in determining whether the child is a competent witness.

(3) In a proceeding where a child is alleged to be an abused child, the court may order that the testimony of the child be taken by deposition in the presence of a judge or a magistrate. On motion of the prosecuting attorney, guardian ad litem, or a party, or in its own discretion, the court may order that the deposition be videotaped. All or part of the deposition is admissible in evidence where all of the following apply:

(a) It is filed with the clerk;

(b) Counsel for all parties had an opportunity and similar motive at the time of the taking of the deposition to develop the testimony by direct, cross, or redirect examination;

(c) The judge or magistrate determines there is reasonable cause to believe that if the child were to testify in person at the hearing, the child would experience emotional trauma as a result of the child's participation at the hearing.

{¶ 34} Juv.R. 27(B) applies to abuse, neglect, and dependency proceedings. The trial court's decision that awarded King legal custody did not arise from a complaint alleging that the child is an abused, neglected, and dependent child. Instead, the court awarded King legal custody based upon King's filing of a complaint for legal custody. Consequently, Juv.R. 27(B) is not applicable.

{¶ 35}  Accordingly, we overrule this assignment of error.

G.

Juv.R. 29

{¶ 36}  Appellant asserts that the trial court erred when applying "Juv.R. 29(A)(B)(C)(D)(E)(F)."  Those provisions state:

(A) Scheduling the hearing

The date for the adjudicatory hearing shall be set when the complaint is filed or as soon thereafter as is practicable.  If the child is the subject of a complaint alleging a violation of a section of the Revised Code that may be violated by an adult and that does not request a serious youthful offender sentence, and if the child is in detention or shelter care, the hearing shall be held not later than fifteen days after the filing of the complaint.  Upon a showing of good cause, the adjudicatory hearing may be continued and detention or shelter care extended.

The prosecuting attorney's filing of either a notice of intent to pursue or a statement of an interest in pursuing a serious youthful offender sentence shall constitute good cause for continuing the adjudicatory hearing date and extending detention or shelter care.

The hearing of a removal action shall be scheduled in accordance with Juv. R. 39(B).

If the complaint alleges abuse, neglect, or dependency, the hearing shall be held no later than thirty days after the complaint is filed.  For good cause shown, the adjudicatory hearing may extend beyond thirty days

either for an additional ten days to allow any party to obtain counsel or for

a reasonable time beyond thirty days to obtain service on all parties or

complete any necessary evaluations. However, the adjudicatory hearing

shall be held no later than sixty days after the complaint is filed.

The failure of the court to hold an adjudicatory hearing within any

time period set forth in this rule does not affect the ability of the court to

issue any order otherwise provided for in statute or rule and does not

provide any basis for contesting the jurisdiction of the court or the validity

of any order of the court.

(B) Advisement and findings at the commencement of the hearing

At the beginning of the hearing, the court shall do all of the

following:

(1) Ascertain whether notice requirements have been complied

with and, if not, whether the affected parties waive compliance;

(2) Inform the parties of the substance of the complaint, the

purpose of the hearing, and possible consequences of the hearing,

including the possibility that the cause may be transferred to the

appropriate adult court under Juv. R. 30 where the complaint alleges that a

child fourteen years of age or over is delinquent by conduct that would

constitute a felony if committed by an adult;

(3) Inform unrepresented parties of their right to counsel and

determine if those parties are waiving their right to counsel;

(4) Appoint counsel for any unrepresented party under Juv. R. 4(A) who does not waive the right to counsel;

(5) Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross-examine witnesses, and, upon request, to have a record of all proceedings made, at public expense if indigent.

(C) Entry of admission or denial

The court shall request each party against whom allegations are being made in the complaint to admit or deny the allegations. A failure or refusal to admit the allegations shall be deemed a denial, except in cases where the court consents to entry of a plea of no contest.

(D) Initial procedure upon entry of an admission

The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.

The court may hear testimony, review documents, or make further inquiry, as it considers appropriate, or it may proceed directly to the action required by division (F) of this rule.

(E) Initial procedure upon entry of a denial

If a party denies the allegations the court shall:

(1) Direct the prosecuting attorney or another attorney-at-law to assist the court by presenting evidence in support of the allegations of a complaint;

(2) Order the separation of witnesses, upon request of any party;

(3) Take all testimony under oath or affirmation in either question-answer or narrative form; and

(4) Determine the issues by proof beyond a reasonable doubt in juvenile traffic offense, delinquency, and unruly proceedings; by clear and convincing evidence in dependency, neglect, and abuse cases, and in a removal action; and by a preponderance of the evidence in all other cases.

(F) Procedure upon determination of the issues

Upon the determination of the issues, the court shall do one of the following:

(1) If the allegations of the complaint, indictment, or information were not proven, dismiss the complaint;

(2) If the allegations of the complaint, indictment, or information are admitted or proven, do any one of the following, unless precluded by statute:

(a) Enter an adjudication and proceed forthwith to disposition;

(b) Enter an adjudication and continue the matter for disposition for not more than six months and may make appropriate temporary orders;

(c) Postpone entry of adjudication for not more than six months;

(d) Dismiss the complaint if dismissal is in the best interest of the child and the community.

(3) Upon request make written findings of fact and conclusions of law pursuant to Civ. R. 52.

(4) Ascertain whether the child should remain or be placed in shelter care until the dispositional hearing in an abuse, neglect, or dependency proceeding. In making a shelter care determination, the court shall make written finding of facts with respect to reasonable efforts in accordance with the provisions in Juv. R. 27(B)(1) and to relative placement in accordance with Juv. R. 7(F)(3).

{¶ 37} Appellant's argument that the trial court erred by failing to comply with Juv.R. 29 is without merit. Juv. R. 29 applies to adjudicatory hearings. In the case at bar, the decision that awarded King legal custody of appellant's child arose from King's filing of a complaint for legal custody and not from a complaint that required the court to hold an adjudicatory hearing, *i.e.*, a complaint alleging that the child is delinquent, abused, neglected, dependent, etc. Consequently, Juv.R. 29 does not apply.

{¶ 38} Accordingly, we overrule this assignment of error.

H.

Juv.R. 30

{¶ 39}  Appellant asserts that the court erred when applying "Juv.R. 30(A)(B)(C)(D)(E)(F)(G)(H)."  Those provisions state:

(A) Preliminary hearing

In any proceeding where the court considers the transfer of a case for criminal prosecution, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult. The hearing may be upon motion of the court, the prosecuting attorney, or the child.

(B) Mandatory transfer

In any proceeding in which transfer of a case for criminal prosecution is required by statute upon a finding of probable cause, the order of transfer shall be entered upon a finding of probable cause.

(C) Discretionary transfer

In any proceeding in which transfer of a case for criminal prosecution is permitted, but not required, by statute, and in which probable cause is found at the preliminary hearing, the court shall continue the proceeding for full investigation. The investigation shall include a mental examination of the child by a public or private agency or by a person qualified to make the examination. When the investigation is completed, an amenability hearing shall be held to determine whether to transfer jurisdiction. The criteria for transfer shall be as provided by statute.

(D) Notice

Notice in writing of the time, place, and purpose of any hearing held pursuant to this rule shall be given to the state, the child's parents, guardian, or other custodian and the child's counsel at least three days prior to the hearing, unless written notice has been waived on the record.

(E) Retention of jurisdiction

If the court retains jurisdiction, it shall set the proceedings for hearing on the merits.

(F) Waiver of mental examination

The child may waive the mental examination required under division (C) of this rule. Refusal by the child to submit to a mental examination or any part of the examination shall constitute a waiver of the examination.

(G) Order of transfer

The order of transfer shall state the reasons for transfer.

(H) Release of child

With respect to the transferred case, the juvenile court shall set the terms and conditions for release of the child in accordance with Crim. R. 46.

{¶ 40}  Juv. R. 30 applies when a juvenile court considers whether to transfer a delinquency complaint for criminal prosecution.  Appellant has not asserted how Juv.R. 30 has any applicability to the case at bar, which involves legal custody.  Moreover, we

fail to see how Juv.R. 30 applies to the trial court's decision that awarded King legal custody.

{¶ 41} Accordingly, we overrule this assignment of error.

I.

Juv.R. 32

{¶ 42} Appellant contends that the court erred when applying "Juv.R. 32(A)(B)(C)(D)." Those provisions state:

(A) Social history and physical or mental examination: availability before adjudication

The court may order and utilize a social history or physical or mental examination at any time after the filing of a complaint under any of the following circumstances:

(1) Upon the request of the party concerning whom the history or examination is to be made;

(2) Where transfer of a child for adult prosecution is an issue in the proceeding;

(3) Where a material allegation of a neglect, dependency, or abused child complaint relates to matters that a history or examination may clarify;

(4) Where a party's legal responsibility for the party's acts or the party's competence to participate in the proceedings is an issue;

(5) Where a physical or mental examination is required to determine the need for emergency medical care under Juv. R. 13; or

(6) Where authorized under Juv. R. 7(I).

(B) Limitations on preparation and use

Until there has been an admission or adjudication that the child who is the subject of the proceedings is a juvenile traffic offender, delinquent, unruly, neglected, dependent, or abused, no social history, physical examination or mental examination shall be ordered except as authorized under subdivision (A) and any social history, physical examination or mental examination ordered pursuant to subdivision (A) shall be utilized only for the limited purposes therein specified. The person preparing a social history or making a physical or mental examination shall not testify about the history or examination or information received in its preparation in any juvenile traffic offender, delinquency, or unruly child adjudicatory hearing, except as may be required in a hearing to determine whether a child should be transferred to an adult court for criminal prosecution.

(C) Availability of social history or investigation report

A reasonable time before the dispositional hearing, or any other hearing at which a social history or physical or mental examination is to be utilized, counsel shall be permitted to inspect any social history or report of a mental or physical examination. The court may, for good cause shown, deny such inspection or limit its scope to specified portions of the history or report. The court may order that the contents of the history or report, in whole or in part, not be disclosed to specified persons. If

inspection or disclosure is denied or limited, the court shall state its

reasons for such denial or limitation to counsel.

(D) Investigation: allocation of parental rights and responsibilities

for the care of children; habeas corpus

On the filing of a complaint for the allocation of parental rights and

responsibilities for the care of children or for a writ of habeas corpus to

determine the allocation of parental rights and responsibilities for the care

of a child, or on the filing of a motion for change in the allocation of

parental rights and responsibilities for the care of children, the court may

cause an investigation to be made as to the character, health, family

relations, past conduct, present living conditions, earning ability, and

financial worth of the parties to the action. The report of the investigation

shall be confidential, but shall be made available to the parties or their

counsel upon written request not less than three days before hearing. The

court may tax as costs all or any part of the expenses of each investigation.

{¶ 43} Presumably, appellant's argument is that the court should have ordered "a social history or physical or mental examination" or "cause[d] an investigation to be made as to the character, health, family relations, past conduct, present living conditions, earning ability, and financial worth of the parties to the action."

{¶ 44} We previously have discussed the discretionary nature of Juv.R. 32 and stated:

Juv.R. 32(A) provides that the court *may* order and utilize a

physical or mental examination at any time after the filing of a complaint.

The use of the word "may" is generally construed as optional, permissive or discretionary. *In re Fleming* (1991), 76 Ohio App.3d 30, 38. Analogously, it has been held that the right of an indigent criminal defendant to an expert witness or a second medical examination is within the discretion of the trial court. See *State v. President* (Apr. 21, 1993), Lorain App. No. 92CA5408, unreported; *State v. McFarland* (Jan. 15, 1993), Muskingum App. No. CA-92-7, unreported; and *State v. Tanner* (Dec. 31, 1991), Franklin App. Nos. 91AP-263 and 651 (all of these cases citing *Ake v. Oklahoma* (1985), 470 U.S. 68). Based upon the foregoing, as well as the parties' citation of this standard of review on appeal, we must determine if the trial court abused its discretion in overruling appellant's motions for appointment of a medical expert and a defense psychologist. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506; *Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 138, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169.

*In re Queen*, 4th Dist. Nos. 93CA11 and 93CA12 (July 23, 1993).

{¶ 45}  In the case at bar, assuming that Juv.R. 32(A), (B), and (C) apply to a

private custody proceeding, we are unable to state that the trial court abused its discretion

by not ordering a social history or a mental or physical examination or by not ordering a

Juv.R. 32(D) investigation.  The limited record before us does not indicate that the trial

court acted unreasonably, unconscionably, or arbitrarily by failing to order a social

history, a mental or physical examination or by failing to otherwise order an

investigation.

{¶ 46}  Accordingly, based upon the foregoing reasons, we overrule this

assignment of error.

J.

Juv.R. 34

{¶ 47}  Appellant argues that the trial court erred when applying "Juv.R.

34(A)(B)(C)(D)(E)(G)(I)(J)."  Those provisions state:

> (A) Scheduling the hearing
>
> Where a child has been adjudicated as an abused, neglected, or
>
> dependent child, the court shall not issue a dispositional order until after it
>
> holds a separate dispositional hearing.  The dispositional hearing for an
>
> adjudicated abused, neglected, or dependent child shall be held at least one
>
> day but not more than thirty days after the adjudicatory hearing is held.
>
> The dispositional hearing may be held immediately after the adjudicatory
>
> hearing if all parties were served prior to the adjudicatory hearing with all
>
> documents required for the dispositional hearing and all parties consent to
>
> the dispositional hearing being held immediately after the adjudicatory

hearing. Upon the request of any party or the guardian ad litem of the child, the court may continue a dispositional hearing for a reasonable time not to exceed the time limit set forth in this division to enable a party to obtain or consult counsel. The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed. If the dispositional hearing is not held within this ninety day period of time, the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice.

In all other juvenile proceedings, the dispositional hearing shall be held pursuant to Juv. R. 29(F)(2)(a) through (d) and the ninety day requirement shall not apply. Where the dispositional hearing is to be held immediately following the adjudicatory hearing, the court, upon the request of any party, shall continue the hearing for a reasonable time to enable the party to obtain or consult counsel.

(B) Hearing procedure

The hearing shall be conducted in the following manner:

(1) The judge or magistrate who presided at the adjudicatory hearing shall, if possible, preside;

(2) Except as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence;

(3) Medical examiners and each investigator who prepared a social history shall not be cross-examined, except upon consent of all parties, for good cause shown, or as the court in its discretion may direct. Any party may offer evidence supplementing, explaining, or disputing any information contained in the social history or other reports that may be used by the court in determining disposition.

(C) Judgment

After the conclusion of the hearing, the court shall enter an appropriate judgment within seven days. A copy of the judgment shall be given to any party requesting a copy. In all cases where a child is placed on probation, the child shall receive a written statement of the conditions of probation. If the judgment is conditional, the order shall state the conditions. If the child is not returned to the child's home, the court shall determine the school district that shall bear the cost of the child's education and may fix an amount of support to be paid by the responsible parent or from public funds.

(D) Dispositional Orders

Where a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

(1) Place the child in protective supervision;

(2) Commit the child to the temporary custody of a public or private agency, either parent, a relative residing within or outside the state,

or a probation officer for placement in a certified foster home or approved foster care;

(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody;

(4) Commit the child to the permanent custody of a public or private agency, if the court determines that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines that the permanent commitment is in the best interest of the child;

(5) Place the child in a planned permanent living arrangement with a public or private agency if the agency requests the court for placement, if the court finds that a planned permanent living arrangement is in the best interest of the child, and if the court finds that one of the following exists:

(a) The child because of physical, mental, or psychological problems or needs is unable to function in a family-like setting;

(b) The parents of the child have significant physical, mental or psychological problems and are unable to care for the child, adoption is not in the best interest of the child and the child retains a significant and positive relationship with a parent or relative;

(c) The child is sixteen years of age or older, has been counseled, is unwilling to accept or unable to adapt to a permanent placement and is in an agency program preparing the child for independent living.

(E) Protective supervision

If the court issues an order for protective supervision, the court may place any reasonable restrictions upon the child, the child's parents, guardian, or any other person including, but not limited to, any of the following:

(1) Ordering a party within forty-eight hours to vacate the child's home indefinitely or for a fixed period of time;

(2) Ordering a party, parent, or custodian to prevent any particular person from having contact with the child;

(3) Issuing a restraining order to control the conduct of any party.

* * * *

(G) Modification of temporary order

The department of human services or any other public or private agency or any party, other than a parent whose parental rights have been terminated, may at any time file a motion requesting that the court modify or terminate any order of disposition. The court shall hold a hearing upon the motion as if the hearing were the original dispositional hearing and shall give all parties and the guardian ad litem notice of the hearing pursuant to these rules. The court, on its own motion and upon proper notice to all parties and any interested agency, may modify or terminate any order of disposition.

* * * *

(I) Bifurcation; Rules of Evidence

Hearings to determine whether temporary orders regarding custody

should be modified to orders for permanent custody shall be considered

dispositional hearings and need not be bifurcated. The Rules of Evidence

shall apply in hearings on motions for permanent custody.

(J) Advisement of rights after hearing

At the conclusion of the hearing, the court shall advise the child of

the child's right to record expungement and, where any part of the

proceeding was contested, advise the parties of their right to appeal.

{¶ 48} As we previously noted, the case at bar did not involve a complaint

alleging that the child is abused, neglected, dependent, delinquent, *etc.* Thus, the

dispositional hearing provisions applicable to those types of proceedings do not apply to

the case sub judice, which involves a petition for legal custody.

{¶ 49} Accordingly, based upon the foregoing reasons, we overrule this

assignment of error.

### K.

### Juv.R. 36

{¶ 50} Appellant asserts that the trial court erred when applying "Juv.R.

36(A)(C)(1)(2)(3)(4)." Those provisions state:

(A) Court review

A court that issues a dispositional order in an abuse, neglect, or

dependency case may review the child's placement or custody

arrangement, the case plan, and the actions of the public or private agency

implementing that plan at any time. A court that issues a dispositional

order shall hold a review hearing one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care. The court shall schedule the review hearing at the time that it holds the dispositional hearing. The court shall hold a similar review hearing no later than every twelve months after the initial review hearing until the child is adopted, returned to the child's parents, or the court otherwise terminates the child's placement or custody arrangement. A hearing pursuant to section 2151.415 of the Revised Code shall take the place of the first review hearing. The court shall schedule each subsequent review hearing at the conclusion of the review hearing immediately preceding the review hearing to be scheduled. Review hearings may also be conducted by a magistrate.

* * * *

(C) Agency review

Each agency required to prepare a case plan for a child shall complete a semiannual administrative review of the case plan no later than six months after the earlier of the date on which the complaint in the case was filed or the child was first placed in shelter care. After the first administrative review, the agency shall complete semiannual administrative reviews no later than every six months. The agency shall prepare and file a written summary of the semiannual administrative review that shall include an updated case plan. If the agency, parents, guardian, or custodian of the child and guardian ad litem stipulate to the

revised case plan, the plan shall be signed by all parties and filed with the written summary of the administrative review no later than seven days after the completion of the administrative review. If the court does not object to the revised case plan, it shall journalize the case plan within fourteen days after it is filed with the court. If the court does not approve of the revised case plan or if the agency, parties, guardian ad litem, and the attorney of the child do not agree to the need for changes to the case plan and to all of the proposed changes, the agency shall file its written summary and request a hearing. The court shall schedule a review hearing to be held no later than thirty days after the filing of the case plan or written summary or both, if required. The court shall give notice of the date, time, and location of the hearing to all interested parties and the guardian ad litem of the child. The court shall take one of the following actions:

(1) Approve or modify the case plan based upon the evidence presented;

(2) Return the child home with or without protective supervision and terminate temporary custody or determine which agency shall have custody;

(3) If the child is in permanent custody determine what actions would facilitate adoption;

(4) Journalize the terms of the updated case plan.

{¶ 51}  Juv.R. 34 applies in abuse, neglect, and dependency cases.  As we already explained, the case at bar is not an abuse, neglect, and dependency case.  Thus, appellant's assertion that the trial court erred by failing to comply with Juv.R. 34 is without merit.

{¶ 52}  Accordingly, based upon the foregoing reasons, we overrule this assignment of error.

L.

Juv.R. 38

{¶ 53}  Appellant contends that the trial court erred when applying "Juv.R. 38(A)(B)."  Those provisions state:

(A) Temporary custody

(1) A person with custody of a child may enter into an agreement with any public or private children services agency giving the agency temporary custody for a period of up to thirty days without the approval of the juvenile court. The agency may request the court to grant a thirty day extension of the original agreement. The court may grant the original extension if it determines the extension to be in the best interest of the child. A case plan shall be filed at the same time the request for extension is filed. At the expiration of the original thirty day extension period, the agency may request the court to grant an additional thirty day extension. The court may grant the additional extension if it determines the extension is in the child's best interest. The agency shall file an updated case plan at the same time it files the request for additional extension. At the expiration

of the additional thirty day extension period, or at the expiration of the

original thirty day extension period if no additional thirty day extension

was requested, the agency shall either return the child to the custodian or

file a complaint requesting temporary or permanent custody and a case

plan.

(2) Notwithstanding division (A)(1) of this rule, the agreement

may be for a period of sixty days if executed solely for the purpose of

obtaining the adoption of a child less than six months of age. The agency

may request the court to extend the temporary custody agreement for

thirty days. A case plan shall be filed at the same time the request for

extension is filed. At the expiration of the thirty day extension, the agency

shall either return the child to the child's custodian or file a complaint with

the court requesting temporary or permanent custody and a case plan.

(B) Permanent custody

(1) A person with custody of a child may make an agreement with

court approval surrendering the child into the permanent custody of a

public children service agency or private child placing agency. A public

children service agency shall request and a private child placing agency

may request the juvenile court of the county in which the child had

residence or legal settlement to approve the permanent surrender

agreement. The court may approve the agreement if it determines it to be

in the best interest of the child. The agency requesting the approval shall

file a case plan at the same time it files its request for approval of the

permanent surrender agreement.

(2) An agreement for the surrender of permanent custody of a child

to a private service agency is not required to be approved by the court if

the agreement is executed solely for the purpose of obtaining an adoption

of a child who is less than six months of age on the date of the execution

of the agreement.

One year after the agreement is entered and every subsequent

twelve months after that date, the court shall schedule a review hearing if a

final decree of adoption has not been entered for a child who is the subject

of an agreement for the surrender of permanent custody.

{¶ 54}  We are unable to discern an assignment of error from appellant's citation

to this rule.  Accordingly, we summarily overrule this assignment of error.

M.

Juv.R. 11 and 14

{¶ 55}  Appellant states in her "conclusion:"  "Modify custody granting April

King physical custody, WVDHHR Children Services temporary custody, concurrent

jurisdiction of courts pending propper [sic] disposition of propper [sic] proceedings."

She further requests the following motions:  "Juv.R. 11(A)(B)(C)(D)[;] Juv.R. 14(A)(B)[;

and] Juv.R. 14(6)(B) [sic.]"

{¶ 56}  "As an appellate court, we [ordinarily] do not consider arguments that the

trial court did not address."  *State ex rel. A.F. Krainz Co., L.L.C. v. Jackson*, 8th Dist.

Cuyahoga No. 98104, 2012-Ohio-5072, ¶12, citing *Roush v. Butera,* 8th Dist. No. 97463,

2012–Ohio–2506, and *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 604 N.E.2d 138 (1992).  As we explained in *Cruse v. Finley*, 4th Dist. Lawrence App. No. 12CA2, 2012-Ohio-5465, ¶20:

> 'In light of the Ohio Supreme Court's determination in *Murphy v.*
> *Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, we, as an
> appellate court, should not first consider an argument that the trial court
> did not address.'  *Lang v. Holly Hill Motel, Inc.,* 4th Dist. No. 05CA6,
> 2005–Ohio–6766, ¶ 22.  The *Murphy* court stated the following: 'A
> reviewing court, even though it must conduct its own examination of the
> record, has a different focus than the trial court.  If the trial court does not
> consider all the evidence before it, an appellate court does not sit as a
> reviewing court, but, in effect, becomes a trial court.'  *Murphy* at 360.

{¶ 57}  Consequently, because the trial court did not consider whether to grant appellant's Juv.R. 11 and Juv.R. 14 motions, we decline to do so in the first instance.

IV.

CONCLUSION

{¶ 58}  Accordingly, based upon the foregoing reasons, we overrule all of appellant's assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.:  Concurs in Judgment Only as to Subsection M; Concurs in Judgment and Opinion as to the remainder of the Opinion.

McFarland, P.J.:  Concurs in Judgment Only.

For the Court


By:_____
         Marie Hoover, Judge


## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.