JOURNAL ENTRY and OPINION
{¶ 1} Appellant N.L. appeals an order of the juvenile court granting permanent custody of her son, to the Cuyahoga County Department of Children and Family Services (CCDCFS). She assigns the following error for our review:
 {¶ 2} "I. The trial court committed reversible error by failing to require the guardian ad litem (GAL) for the child to submit a written report prior to or at the time of the hearing and allowing the GAL to make a closing statement containing allegations of fact adverse to the appellant without allowing for the cross examination of the GAL's allegation by the appellant."
 {¶ 3} Having reviewed the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.
 {¶ 4} In November 2000, the police found a child murdered in N.L.'s home. The child, not N.L.'s, had numerous stab wounds to the body. Although N.L. provided inconsistent stories regarding the child's death, the authorities did not charge her with the crime.
 {¶ 5} A month later, CCDCFS filed a complaint alleging N.L. neglected her son R.C., born February 23, 1998. CCDCFS also filed a motion for pre-dispositional temporary custody alleging "the child is in immediate danger from his surroundings, and removal is necessary to prevent immediate or threatened physical or emotional harm." Thereafter, the court found the minor child was dependent and neglected, and awarded temporary custody to CCDCFS. CCDCFS placed the child with his maternal great aunt; several months later, CCDCFS filed a motion to modify temporary custody to permanent custody. At trial, social worker, Tania Isom stated the minor child was initially placed in a foster home where he stayed for one day, and then placed with his maternal great aunt, where he has been until the date of trial. She stated an unlimited visitation schedule was established for N.L. and the alleged father. However, despite the unlimited visitation schedule, she stated N.L. visited about three times in nine months and the alleged father never visited.
 {¶ 6} Isom testified a three-prong case plan was implemented for N.L. She was to complete parenting classes, drug assessment and psychiatric evaluation.
 {¶ 7} Isom testified N.L. attended the parenting classes, participated in the program, and passed the test. Isom stated although she has not observed any of N.L.'s parenting skills, there is absolutely no bonding or attachment between N.L. and her minor child.
 {¶ 8} Isom further testified she referred N.L. to Community Assessment for her substance abuse problem. N.L. started the treatment program in January 2001 and was discharged in March 2001, because of repeatedly testing positive for drugs and for her many absences. Isom referred N.L. again for treatment, and she was placed in an enrichment treatment program at Hitchcock's Women Center. There, N.L. completed a thirty-day inpatient program. N.L. was required to follow up with an outpatient aftercare program, attend a twelve-step support program, and submit to random urine testing. N.L. was required to remain sober for six months after completion of the program; however, Isom testified N.L. continued to test positive for drugs when the random tests were administered.
 {¶ 9} Isom stated N.L. had the psychological evaluation and was advised she needed counseling. She was also supposed to complete psychiatric evaluation for possible medication, but she never did. Finally, Isom testified over the two year period the minor child has been under the custody of CCDCFS, N.L. has demonstrated noncompliance with the case plan established to regain custody of her minor child. It was therefore in the best interest of the minor child for CCDCFS to have permanent custody.
 {¶ 10} N.L. testified she had complied with the case plan established by CCDCFS. N.L. said from June 2002 through September 2002, she enrolled in a drug treatment program at Harbor Light. She stated she submitted urine samples every week, and continued to do so after the completion of the program.[1] She stated she also went through counseling at the Free Clinic. N.L. admitted she never made the social worker aware she attended the program at Harbor Light, nor the fact she was receiving counseling at the Free Clinic. When asked why she did not inform the social worker, she stated they did not have a good relationship.[2]
 {¶ 11} On cross examination, N.L. admitted she first used PCP at age 19, and she was using PCP two years prior when CCDCFS obtained temporary custody of her minor child. She also admitted she had tested positive for PCP since that time. Additionally, she admitted forging a document stating she completed an aftercare program.[3]
 {¶ 12} Finally, N.L. admitted she is currently on probation for receiving stolen property, and was recently incarcerated for violating her probation.[4]
 {¶ 13} The alleged father, R.C., did not testify. However, the record reflects he has a substance abuse problem, and a case plan was established for him, but he was unable to follow through with the plan because he was incarcerated. He was incarcerated from April 2001 through March 2002, and then again from August 2002 through October 2002.
 {¶ 14} The Guardian Ad Litem, Martin Keenan, gave an oral report to the court. He stated the proceeding began as a result of discovering a child who was murdered by a friend of N.L.'s.[5] He said the police reports indicated extensive drug use, and specifically the use of PCP.
 {¶ 15} Keenan stated N.L. had been given a period of two years according to the law to remedy her substance abuse problem in order to facilitate a reunification with her child. However, she had not been compliant with the case plan established for her and continued to test positive for drugs.[6]
 {¶ 16} Keenan also stated it was very difficult to contact N.L., who he sent letters to and repeatedly telephoned. He stated N.L. neglected to contact him. According to Keenan, the alleged father has never contacted him.
 {¶ 17} Finally, Keenan stated he believed CCDCFS provided sufficient evidence to support the motion for permanent custody of the minor child, R.C., Jr., and he asked the court to award permanent custody to CCDCFS.
 {¶ 18} The trial court awarded permanent custody of the minor child to CCDCFS. N.L. now appeals.
 {¶ 19} In her sole assigned error, N.L. argues the trial court erred in granting permanent custody of her minor child to CCDCFS when no guardian ad litem's report was filed with the court.
 {¶ 20} This court has historically held the failure of a guardian ad litem to adhere to the requirement of R.C. 2151.414(C) is waived unless raised at the trial court level.[7] An award of permanent custody will not be disturbed where the guardian ad litem failed to issue a written report and no objection was offered at the hearing.[8]
 {¶ 21} We, therefore, review this issue only upon a showing of prejudice. The record shows the guardian ad litem did testify at the hearing and recommended the trial court grant permanent custody of the child to CCDCFS. In Goldfuss v. Davidson,[9] the Ohio Supreme Court discussed the plain error doctrine in a civil context: "The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings."[10]
 {¶ 22} In the instant case, we do not find any manifest injustice to warrant the use of the plain error doctrine. We are not persuaded that the trial court's ruling would have been different had she insisted on the submission of a written guardian ad litem report. There was ample evidence to support the ruling without the guardian ad litem's written recommendation.
 {¶ 23} We acknowledge the termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child.[11] Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is neither abandoned nor orphaned, it must find by clear and convincing evidence that (1) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E), and that (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D).[12]
 {¶ 24} When determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the juvenile court must find by clear and convincing evidence that at least one of the enumerated factors in R.C. 2151.414(E) exists as to each of the child's parents.[13] Those factors are:
 {¶ 25} "(1) Following the placement of the child outside the child's home * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *[;]"
 * * * {¶ 26} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."[14]
 {¶ 27} When a juvenile court finds by clear and convincing evidence that one of the enumerated factors in R.C. 2151.414(E) is present, the court must, as in the instant case, conclude that the child cannot be placed within a reasonable time or should not be placed with the parent.[15]
 {¶ 28} The trial court heard enough testimony prior to the GAL's oral report, to conclude N.L. failed continuously and repeatedly to substantially remedy the conditions causing her child to be placed outside her home. We therefore conclude N.L.'s sole assigned error lacks merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there weare reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Frank D. Celebrezze, Jr., J., and Anthony O. Calabrese, Jr., J., concur.
[1] Trial Transcript at p. 65-66.
[2] Trial Transcript at p. 70.
[3] Trial Transcript at p. 72.
[4] Trial Transcript at p. 78-79.
[5] Trial Transcript at p. 115.
[6] Trial Transcript at p. 118.
[7] See In re Cordell, (April 2, 1992), Cuyahoga App. Nos. 60049/60050.
[8] See In re Keltner, (Aug. 10, 1998), Butler App. No. CA 97-10-188;In re Malone, (May 11, 1994), Scioto App. No. 93CA2165.
[9] (1997), 79 Ohio St.3d 116.
[10] Id., citing Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207,209; LeFort v. Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121,124; Cleveland Elec. Illum. Co. v. Astorhurst Land Co. (1985),18 Ohio St.3d 268, 275.
[11] In re Wise (1994), 96 Ohio App.3d 619, 624.
[12] See R.C. 2151.414(B)(2); In re William S. (1996), 75 Ohio St.3d 95,99.
[13] In re William S., 75 Ohio St.3d at 101.
[14] R.C. 2151.414(E).
[15] In re Thorn, (Feb. 16, 2000), Summit App. No. 19597.