[Cite as *In re B.S.*, 2023-Ohio-4548.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE B.S. | : | |
| | : | No. 113014 |
| A Minor Child | : | |
| | : | |
| [Appeal by A.A., Mother] | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 14, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-23903564

### *Appearances:*

Helen Rhynard, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Zachary J. Lafleur, Assistant Prosecuting
Attorney, *for appellee*.

MARY EILEEN KILBANE, P.J.:

{¶ 1} Appellant A.A. ("Mother") appeals from the juvenile court's decision awarding permanent custody of her minor child B.S. (d.o.b. 11/3/2010) to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency"). For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} In a previous juvenile court case, B.S. was adjudicated neglected as a result of Mother's substance abuse issues, mental health issues, and inability to meet B.S.'s mental health, educational, and basic needs. As a result of that adjudication, on May 31, 2022, temporary custody of B.S. was awarded to her father, D.S. ("Father").[1]

{¶ 3} On March 23, 2023, the agency filed a complaint for neglect, dependency, and permanent custody to the agency with respect to B.S. The complaint alleged that Father has a substance abuse issue, specifically with respect to alcohol. The complaint alleged that Father had recently relapsed, exhibited aggressive behaviors, and was kicked out of his mother's home, where he had been residing with B.S. As a result, Father was without a stable residence to provide for B.S. The complaint further alleged that Father has not been consistently ensuring that B.S. has access to mental health services and has minimized B.S.'s need for mental health services, despite B.S. experiencing ongoing mental health symptoms.

{¶ 4} With respect to Mother, and relevant to this appeal, the complaint alleged that Mother lacked safe and appropriate housing to care for B.S. and that Mother has failed to complete services to address the concerns related to her substance abuse, mental health, parenting, and inability to meet B.S.'s basic needs. The complaint further alleged that Mother was recently charged with drug

---

[1] The initial case also involved B.S.'s brother, S.S. S.S. and B.S. share a biological mother, A.A., but have different biological fathers. As a result of the initial adjudication, S.S.'s biological father was awarded custody of S.S. S.S. is not a subject of this appeal.

possession and was subsequently arrested for violating her probation related to that case.

{¶ 5} The agency received temporary custody of B.S. in March 2023. At that time, B.S. was initially placed with a maternal aunt. This relative was initially interested in obtaining legal custody of B.S. but following an incident in which B.S. exhibited aggressive behavior, B.S. was removed from her aunt's care and placed with her maternal grandmother on April 18, 2023. The maternal grandmother was also initially willing to obtain legal custody, but following an incident in which B.S. was physically aggressive towards the grandmother, the grandmother informed the agency that she was unable to adequately care for B.S. B.S. was then transferred to a residential placement.

{¶ 6} On May 9, 2023, the court held an adjudicatory hearing. Neither Mother nor Father appeared at this hearing. The court heard testimony from agency social worker Adonte Haddox ("Haddox"). On May 12, 2023, the court adjudicated B.S. neglected and dependent.

{¶ 7} On June 21, 2023, the court held a dispositional hearing. Again, the court confirmed that notice and service requirements on both parents had been met. Neither parent appeared for the dispositional hearing. The court again heard testimony from Haddox, who testified that a case plan was developed with respect to B.S., Mother, and Father, and the goal of the case plan was reunification. Haddox testified that Mother's case plan involved parenting, mental health, and substance abuse issues.

{¶ 8} With respect to mental health, Haddox testified that the agency had previously learned that Mother was diagnosed with acute stress disorder. He went on to testify that when Mother was incarcerated earlier in 2023, Mother completed a psychological assessment and the agency wanted to determine Mother's emotional stability to care for B.S. Haddox testified that the agency referred Mother to two different places for mental health services. Haddox testified that Mother communicated to him that she had already completed a mental health assessment and was not willing to complete a second assessment; however, Mother also declined to sign a release of information that would have allowed the agency to access that assessment or otherwise provide the agency with documentation related to that assessment.

{¶ 9} With respect to parenting, Haddox testified that he had last spoken to Mother earlier in June 2023, and she expressed that she was willing to engage in visitation with B.S. but was not willing to discuss any case plan services. Haddox stated that when the agency initially became involved with the family, Mother was referred for a parenting course, and then Haddox provided an additional referral when he was assigned to the case. According to Haddox, Mother did not engage in any parenting-related case plan services.

{¶ 10} With respect to substance abuse, Haddox testified that Mother has a known history of substance abuse. Further, earlier in 2023, Mother was incarcerated related to drug possession charges, and Haddox testified that the agency was concerned that Mother's substance abuse has impacted her ability to

care for B.S. When asked what substances Mother used, Haddox testified that she self-reported use of alcohol and marijuana, but she was indicted for "possession of LSD, meth, and [Vyvanse] without a prescription."

{¶ 11} With respect to housing, Haddox testified that Mother reported that she has stable housing in Parma, Ohio, but he has been unable to verify that Mother has appropriate housing. Haddox testified that throughout the case, he has repeatedly attempted to meet with Mother, and Mother either refuses to schedule a meeting at her home or schedules a meeting at her home only to cancel the meeting in the hours leading up to the scheduled meeting time. Haddox testified that the agency has sent correspondence to Mother, and it has come back undeliverable.[2]

{¶ 12} Haddox also testified as to Mother's history of visitation with B.S. He explained that since the agency obtained custody in March 2023, Mother has completed two separate visits with B.S., in April and May of 2023. Otherwise, Haddox testified that Mother has communicated a desire to see B.S. but has failed to follow through with additional visitation.

{¶ 13} Haddox testified that B.S.'s case plan services related to mental health. Haddox further testified that at the outset of the case, B.S. reported that she had been wetting the bed. B.S. reported that she was fearful of Father and that she wanted to see a therapist, but Father was unwilling to follow through with this. According to Haddox, it was not until January 2023, when B.S. reported that she

_____

[2] At the adjudicatory hearing, the agency presented evidence that an eviction action had been initiated against Mother and was subsequently dismissed; Haddox was not able to verify why the case had been dismissed.

was suicidal, that Father expressed any willingness to have B.S. seen by a mental health provider.

{¶ 14} Haddox explained that B.S. was referred to a number of different places for mental health services, and at the time of the dispositional hearing, B.S. was receiving mental health services in a residential program through Ohio Guidestone. Haddox testified that B.S. had reported a high degree of trauma, both while being in Father's temporary custody and prior to the agency's involvement with her family. Haddox testified that B.S. had an individualized education plan ("IEP") due to her ADHD diagnosis and gaps in her learning as a result of neglect.

{¶ 15} Haddox also testified as to B.S.'s custodial history as described above. He explained that while the agency had not identified any additional relatives who were willing and able to care for B.S., there was a family friend — the mother of B.S.'s best friend — who had expressed interest in obtaining custody. Haddox testified that the agency was not willing to recommend this individual for custody at the time of the dispositional hearing because it had not yet established a relationship with the individual, but the individual had already started the process of obtaining a foster-to-adopt license to foster B.S., and the agency was willing to explore this option.

{¶ 16} Following Haddox's testimony, B.S.'s guardian ad litem ("GAL") addressed the court. The GAL testified that it was in B.S.'s best interest for the agency to receive permanent custody. The GAL testified that B.S. had "been through a lot" but stated that she is "a very smart girl" and was currently getting the treatment and services she needs. The GAL also informed the court that B.S. initially

expressed a desire to live with one or both of her grandmothers but was now interested in living with her best friend's mother. According to the GAL, B.S. had no interest in returning to the custody of Mother or Father. The GAL did not submit a written report to the court.

{¶ 17} At the conclusion of the hearing, the court stated that it took the GAL's recommendation into consideration and made findings under R.C. 2151.353(A)(4), and the best interest factors under R.C. 2151.414(D)(1)(a) through (E). The court terminated the prior order placing B.S. in the temporary custody of the agency and ordered that B.S. be placed in the permanent custody of the agency.

{¶ 18} On June 23, 2023, the juvenile court issued a corresponding journal entry awarding permanent custody of B.S. to the agency in which it made the following findings:

> In accordance with ORC 2151.353(A)(4), the Court may commit the child to permanent custody of a public children services agency or private placing agency, if the court determines in accordance with ORC 2151.414(E) that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with ORC 2151.414(D)(1) that the permanent commitment is in the best interest of the child.
>
> The child's continued residence in or return to the home of [D.S.] would be contrary to the child's best interest.
>
> The court further finds that reasonable efforts were made to prevent the removal of the child from the home, or to return the child to the home and finalize a permanency plan, to wit: reunification. Relevant services provided to the family include: the Mother was referred for Parenting, Mental Health and Substance Abuse Services. The Father was referred for Domestic Violence, Mental Health, Substance Abuse, Parenting and Housing Services. The Child receives Mental Health Services.

With respect to the best interest of the child, the Court has considered the following factors under ORC 2151.414(D)(1):

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster caregivers and out-of-home providers, and any other person who may significantly affect the child.

(b) The wishes of the child, as expressed by the child or through the child's guardian ad litem, with due regard for the maturity of the child. *The GAL recommends permanent custody.*

(c) The custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period. *This is the second time the child has been in Agency custody.*

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody. *The child deserves a safe and stable environment where the child's needs can be met. This cannot be achieved with either parent as the parents have failed to engage in and complete services and remedy the cause for removal. Willing or appropriate relatives have not been identified.*

(e) Whether any factors in divisions (E)(7) to (11) of this section apply in relation to the parents and the child.

The Court finds by clear and convincing evidence that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, pursuant to ORC 2151.414(E):

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(16) Any other factor the Court finds relevant: The Mother has another child who was removed from her custody and placed in the custody of that child's father. Mother and Father failed to appear for any court hearings on this case.

The Court does find by clear and convincing evidence that it is in the best interest of the child to be placed in the Permanent Custody of CCDCFS.

(Emphasis sic.)

{¶ 19} Mother appeals, presenting two assignments of error for our review.

I. The trial court erred when it awarded permanent custody to CCDCFS as its findings are not supported by clear and convincing evidence and not in the best interest of the child.

II. The trial court's decision to award permanent custody to CCDCFS is against the child's best interest when the court fails to address the conflict of interest between the child and the Guardian Ad Litem and the Guardian's failure to perform his duties.

**Law and Analysis**

**I. Permanent Custody**

{¶ 20} Mother's first assignment of error argues that the trial court's award of permanent custody to the agency was error because its findings were not supported by clear and convincing evidence and the decision was not in the best interest of the child. Specifically, Mother argues that the court's termination of her parental rights was against the manifest weight of the evidence because the alleged abuse was poorly described in the record, there was little evidence to suggest that the children's emotional and behavioral problems had improved while in agency

custody, and the agency's allegations that Mother was not benefiting from case plan services were unsupported by the record.

{¶ 21} A parent has a fundamental interest in the care and custody of his children. *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 20. However, parental rights are not absolute: "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979). "By terminating parental rights, the goal is to create 'a more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *In re R.G.*, 8th Dist. Cuyahoga No. 104434, 2016-Ohio-7897, ¶ 21, quoting *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

{¶ 22} On a complaint alleging abuse, neglect or dependency with a dispositional request for permanent custody, a juvenile court must satisfy a two-prong test set forth in R.C. 2151.353(A)(4) before it can terminate parental rights and grant permanent custody to the agency. The juvenile court must find by clear and convincing evidence, in accordance with R.C. 2151.414(E), that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent. Additionally, the court must find that permanent custody is in the child's best interest.

{¶ 23} Clear and convincing evidence has been defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 24} "R.C. 2151.414(E) provides that if the juvenile court determines by clear and convincing evidence that one or more of the conditions listed exist as to each of the child's parents, 'the court *shall* enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.'" *In re K.R.*, 8th Dist. Cuyahoga No. 112036, 2023-Ohio-936, ¶ 34. (Emphasis added.) R.C. 2151.414(E) lists numerous conditions:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> * * *
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the

child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

* * *

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse of physical, emotional, or mental neglect.

* * *

(16) Any other factor the court considers relevant.

{¶ 25} Here, the court specifically cited R.C. 2151.414(E)(1), (4), (14), and (16) in making its finding that B.S. could not be placed with either parent in a reasonable time or should not be placed with either parent. Following a thorough review of the record, we find that there was sufficient evidentiary support for these findings.

{¶ 26} As an initial matter, we note that the record in this case is relatively sparse; only one witness testified at each hearing, and neither parent participated.

{¶ 27} With respect to Mother's failure to remedy the conditions causing removal pursuant to R.C. 2151.414(E)(1), the record reflects that Mother either completely failed to engage in services related to substance abuse, mental health, or parenting, or failed to provide any documentation or sign a release of information that would have allowed the agency to confirm that she had in fact engaged in case plan services. Further, the record reflects that during the juvenile court proceedings, Mother was incarcerated related to drug possession charges.

**{¶ 28}** With respect to Mother's lack of commitment to B.S. pursuant to R.C. 2151.414(E)(4), the record reflects that Mother did not participate in the juvenile court proceedings at any point. While the record reflects that Mother communicated with B.S. regularly and completed two visits with B.S., that is the extent of Mother's visitation with B.S. She likewise refused to provide the agency with access to her home to verify that she had stable, appropriate housing for B.S.

**{¶ 29}** With respect to R.C. 2151.414(E)(14), relating to Mother's unwillingness to meet B.S.'s basic needs, the record reflects that, as discussed above, Mother was entirely unwilling to engage in case plan services or visit B.S. more than twice.

**{¶ 30}** Finally, with respect to R.C. 2151.414(E)(16), other relevant factors, the court found that Mother's other child was removed from Mother's custody and that neither parent participated in the juvenile court proceedings. Both of these findings are clearly supported by the record in this case.

**{¶ 31}** In light of the foregoing findings, all of which were supported by clear and convincing evidence, the trial court was required by statute to conclude that B.S. cannot be placed with either parent within a reasonable time or should not be placed with either parent.

**{¶ 32}** With respect to the second prong of the test, the court found that it was in the best interest of B.S. for the agency to be awarded permanent custody.

{¶ 33} R.C. 2151.414(D) provides a list of factors for the court to consider in determining the best interest of the child. Here, the court considered the factors in R.C. 2151.414(D)(1)(a) through (e):

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

Specifically, the court's journal entry acknowledged that this was the second time B.S. had been placed in agency custody, that the GAL recommended permanent custody, and that B.S. deserves a safe and stable environment where her needs can be met, which cannot be achieved with either parent or with a willing and appropriate relative.

{¶ 34} Our review of the record reveals that all of these findings are supported by clear and convincing evidence. Therefore, we cannot conclude that the

trial court's permanent custody determination was an abuse of discretion. For these reasons, Mother's first assignment of error is overruled.

## II. GAL

{¶ 35} In her second assignment of error, Mother argues that the trial court's permanent custody determination is against B.S.'s best interest because the trial court failed to address the conflict of interest between B.S. and the GAL and the GAL's failure to perform his duties.

{¶ 36} Mother asserts that the GAL's recommendation for permanent custody was at odds with the child's wishes. This assertion is unsupported by the record. The record reflects that previously in the proceedings, B.S. wished to be placed with a relative, and at the time of the dispositional hearing, she was interested in being placed with her friend's mother. The record also reflects that at the time of the dispositional hearing at this matter, while the agency was not prepared to formally recommend that B.S. be placed with her friend's mother, a grant of permanent custody to the agency would possibly involve a placement with her friend's mother. Therefore, the assertion that a recommendation of permanent custody conflicts with B.S.'s desire to be placed with her friend's mother is unsupported by the record. We see no conflict between B.S.'s wishes and the GAL's recommendation.

{¶ 37} We turn now to Mother's argument that the GAL did not perform his duties pursuant to local rules. R.C. 2151.281, which governs the appointment of a GAL, requires a juvenile court to "appoint a guardian ad litem, subject to rules

adopted by the supreme court, to protect the interest of a child in any proceeding * * * held pursuant to [R.C.] 2151.414." R.C. 2151.281(B)(1). R.C. 2151.281(I), which governs a GAL's responsibilities and duties, provides:

> The guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child in accordance with rules adopted by the supreme court.

{¶ 38} Further, Article IV, Section 5(A)(1) of the Ohio Constitution provides the Supreme Court of Ohio with general superintendence over all the courts in the state. In accordance with this authority, the Supreme Court originated the Rules of Superintendence for the Courts of Ohio, including the courts of common pleas and the divisions thereof. Ohio Sup.R. 1. *See In re D.E.*, 10th Dist. Franklin No. 20AP-83, 2021-Ohio-524, ¶ 72. The Rules of Superintendence contain certain specified provisions that apply in domestic relations and juvenile court cases where the court appoints a GAL. Specifically, Ohio Sup.R. 48.03 provides a nonexhaustive list of duties that GALs are required to perform, including providing the court recommendations of the best interest of the child — which may be inconsistent with the wishes of the child, act with respect and courtesy, and attend any hearing relevant to the responsibilities of the GAL. Further, R.C. 2151.414(C) provides that

> [a] written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held

pursuant to division (A) of this section or section 2151.25 of the Revised Code but it shall not be submitted under oath.

{¶ 39} This court has consistently held that the failure of a GAL to adhere to the requirement of R.C. 2151.414(C) is waived unless raised at the trial-court level. *In re R.C.*, 8th Dist. Cuyahoga No. 82453, 2003-Ohio-7062, ¶ 20, citing *In re Cordell v. Cordell*, 8th Dist. Cuyahoga Nos. 60049 and 60050, 1992 Ohio App. LEXIS 1755 (Apr. 2, 1992). An award of permanent custody will not be disturbed where the GAL failed to issue a written report and no objection was offered at the hearing. *Id.*, citing *In re Keitner*, 12th Dist. Butler No. CA 97-10-188, 1998 Ohio App. LEXIS 3647 (Aug. 10, 1998).

{¶ 40} Mother did not appear at any proceeding in this case, let alone make a timely objection to the GAL's failure to submit a written report. As such, she has waived this argument on appeal. An appellate court may recognize an error that an appellant waived only if it constitutes plain error. *In re T.C.K.*, 4th Dist. Washington No. 13CA3, 2013-Ohio-3583, ¶ 16. The Ohio Supreme Court has admonished courts to limit applying the plain error doctrine to cases "involving exceptional circumstances where error, to which no objection was made at the court, seriously affects the basic fairness, integrity, or public reputation of the judicial process * * *." *Id.*, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099 (1997).

{¶ 41} This is not a case in which Mother's perceived failure of the GAL to fulfill his duties seriously affected the basic fairness of the proceedings. Our review

of the record shows that the GAL substantially complied with his duties to provide the court with relevant information and an informed recommendation as to B.S.'s best interest.  For these reasons, Mother's second assignment of error is overruled.

{¶ 42} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

MARY J. BOYLE, J., and
MICHAEL JOHN RYAN, J., CONCUR